FILED
2023 Aug-17  PM 03:25
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## TUSCALOOSA DIVISION

|  |  |  |
|---|---|---|
| JAMES OUTDOOR, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION FILE |
| | ) | |
| v. | ) | NO. _____ |
| | ) | |
| CITY OF NORTHPORT, ALABAMA, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff James Outdoor, LLC ("James") is a local start-up business trying to break into the outdoor advertising business. The City of Northport has stymied those efforts thus far by defying the City's duly-adopted code and otherwise acting in an unconstitutional manner to squelch James's business and speech.

## PARTIES

1.

Plaintiff James Outdoor, LLC ("James") is a limited liability company that seeks to enter into the outdoor advertising business by erecting and operating signs that will be used by businesses, individuals, churches, charities, and governmental agencies to post commercial and noncommercial messages. James is a start-up operation with no signs yet in operation. James is owned by City of Northport

residents John and Audrey James.  They seek to grow a sign business in Northport so they can operate locally where they are raising their children.

2.

Defendant City of Northport, Alabama ("City") is a political subdivision of the State of Alabama located in Tuscaloosa County.  The City has a population of more than 30,000 people and has within its boundaries many miles of commercial roadways where signage is useful to direct and inform motorists.

## JURISDICTION AND VENUE

3.

Plaintiff's federal law claims arise under the First and Fourteenth Amendments to the United States Constitution and Section 1983 of the Civil Rights Act.  This Court has original jurisdiction pursuant to 28 U.S.C. § 1331. Plaintiff's state law claims are related in such a way to its federal law claims that this Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

4.

Defendant is subject to the jurisdiction of this Court and venue in the Tuscaloosa Division is proper against Defendant under the facts and circumstances as alleged herein.

## FACTUAL AND PROCEDURAL BACKGROUND

**A.**     **James's Investigation, Application, and Requests to Appeal, for a Special Exception, and for a Variance.**

5.

In 2021, James began investigating putting up a sign or signs near Northport. Although the City code would not allow him to build such a sign in most areas, he could install a sign outside of the City's boundaries pursuant to the applicable rules in Tuscaloosa County.

6.

Ultimately, after reviewing all of the latest City and County maps, Mr. James determined that there was a parcel of land at 13512 Highway 43 North that was not in the City limits but would be perfect for a new billboard, based on the high traffic and surrounding businesses.  The sign would be located between a McDonald's restaurant and a Jack's restaurant.

7.

Mr. James reviewed the City of Northport's maps to determine whether or not the property at 13512 Highway 43 North was in the City limits.

8.

The maps plainly showed that 13512 Highway 43 North was **not** in the City limits.

9.

Based on the City's maps, Mr. James knew that he could permit a billboard at the site because it was compliant with County and State rules. He contacted the local owners of the parcel at issue, the Hendrix family. They agreed to a lease whereby James will install the sign and the family would be paid a substantial amount each month as rent.

10.

Mr. James then contacted surveyor Kevin Hinkle, President of Montgomery & Hinkle, who has been a certified surveyor in Alabama for 23 years and has his offices in the City of Northport. Mr. Hinkle prepared a survey showing the proposed James sign on the Hendrix family property.

11.

On or about August 1, 2022, James submitted an application to the Alabama Department of Transportation ("ALDOT") for a state permit to erect an outdoor advertising sign at 13512 Highway 43 North. This application showed the ***exact*** spot where the sign would be posted by listing the precise latitude and longitude of the sign. The application included Mr. Hinkle's survey and aerial photos of the parcel, each of which showed the exact location of the proposed sign.

12.

As part of ALDOT's processing of the application, local ALDOT official Darby Campbell contacted the City of Northport to confirm that the property at 13512 Highway 43 North was outside of the City limits.  If the proposed sign's location was inside the City limits, Ms. Campbell would need a City sign-off for the application.  If the site was outside the City limits, then she would not need any action by the City.  She was told by City Zoning Administrator Shawn Patten that the sign location was not in the City limits.  Mr. Patten had confirmed this fact by reviewing the City's own maps and resources.

13.

Indeed, Ms. Campbell made a handwritten notation on the permit application package that stated "City of Northport has confirmed this property is NOT within their City Limits."

14.

Thereafter, on or about December 15, 2022, ALDOT issued to James permit number 5-2-557 to erect an outdoor advertising sign at 13512 Highway 43 North.

15.

In reliance on the City's official documentation and repeated statements that 13512 Highway 43 North was outside the City limits and the duly and properly issued ALDOT permit, Mr. James ordered the fabrication of the steel outdoor

advertising sign structure and purchased two digital displays for the sign from Formetco, a well-known sign manufacturing company.

16.

In order to pay Formetco for the sign structure and digital faces, James borrowed $183,600 from Stark LLC, a financing company that specializes in lending funds to outdoor advertising companies.  The loan was closed in early 2023 and the funds paid to Formetco.  The billboard structure is currently in a storage yard and the LED displays are being stored in a warehouse.  The James family will be required to make monthly payments, which climb to $2,526 per month in April 2024, until the entire outstanding balance is due in several years.

17.

In order to move forward with the installation of its outdoor advertising sign, James retained an electrical contractor to run power to the sign.  In order to start new service, the power company required a sign-off by the City even though the parcel at issue was not in the City.

18.

In response to receiving the electrical application, City staff advised James and its electrical contractor that the City would issue the electrical permit after both James and its contractor obtained business licenses from the City.  James and the

6

electrical contractor each applied to the City for business licenses and paid the requisite fees associated with obtaining the business licenses.

19.

After James and its contractor obtained City business licenses, the City suddenly refused to issue the electrical permit, claiming that the City maps were incorrect, that 13512 Highway 43 North was in the City limits, and that, therefore, James could not have an outdoor advertising sign because the City's Sign Regulations did not allow for such a sign at that site in the City.

20.

According to the City's new position, the property at 13512 Highway 43 North was annexed into the City limits in 2015, but the City failed to properly update its maps to reflect this development.

21.

James immediately reached out to the City Attorney to discuss the sudden reversal of City staff, who had previously confirmed that the property at 13512 Highway 43 North was **not** in the City limits. The City Attorney indicated that the City was standing by its position and would not allow the sign project to move forward.

22.

James submitted a written request to appeal this determination and simultaneously applied to the City for a variance to allow the sign and for a special exception to allow an outdoor advertising sign.

23.

In response to the requests for an appeal, a variance, and a special exception, the City refused to allow James to pursue an appeal or a special exception and indicated that James could only pursue a variance.

24.

James objected to the City's assertion that James could only pursue a variance, but the City refused to allow James to pursue the other requested remedies.

25.

The ZBA scheduled the variance request for June 15, 2023.

26.

Variances for signs are governed by Section 808 – Variances and Waivers of the Sign Regulations of the Northport Zoning Regulations.  This provision provides:

> It is the explicit intent that this section be enacted to accomplish the purposes as set forth in Section 800 and any variance granted by the Board of Zoning Adjustment (BZA) would be detrimental to these purposes.  Accordingly, the BZA shall only grant a variance in the

case of an extreme hardship.  Acts of God and economic conditions shall not be considered hardships for purposes of this section.

27.

Thus, James had to show "extreme hardship" and such hardship could not be caused by an Act of God, such as a tornado, or economic conditions, such as a recession or high inflation.  During the June 15, 2023 hearing before the ZBA, James introduced evidence and testimony that conclusively demonstrated that it should be granted a variance due to the extreme hardship resulting from the City's incorrect maps and mistaken statements that the sign location was not in the City. The City's failure to update its records since the 2015 annexation led to the expenditure of over \$180,000 on the sign project and hundreds of hours of work by the James family in pursuit of the new sign.  "Extreme hardship" was indisputably shown.

28.

James also conclusively demonstrated that the requested variance was not necessitated by an Act of God nor was it the result of general economic conditions, such as a recession.  The hardship was 100% caused by the City's failure to update its records to reflect the 2015 annexation.  James would never have pursued the sign but for that error.  Further, the ALDOT permit would never have been issued – and the sign structure and equipment ordered at great expense – if the City staff had not confirmed to ALDOT that the site was outside the City limits.

29.

At the conclusion of the June 15, 2023 variance hearing, the ZBA voted to table the matter until the July 20, 2023 ZBA meeting so they could consider the arguments that had been raised.

30.

James submitted supplemental items requested by the ZBA members.

31.

James demonstrated that, pursuant to dictionary meanings and Alabama law, the term "economic conditions" refers to the present state of affairs in the overall economy of a country or geographical region. *E.g.*, *Shewbart v. Shewbart*, 64 So. 3d 1080, 1086 (Ala. Civ. App. 2010) (finding that "economic conditions" referred to the present state of the economy where the petitioner lived). The prohibition on considering "economic conditions" did not mean the ZBA could not consider the huge financial losses suffered by James based on the City's errors and mistakes.

32.

James demonstrated that the phrase "extreme hardship" does allow – and even require – the ZBA to consider the financial impact on James when deciding whether to grant a variance. *See, e.g.*, *Board of Zoning Adjustment v. Mill Bakery & Eatery, Inc.*, 587 So. 2d 390, 392 (Ala. Civ. App. 1991) (affirming grant of variance because financial losses occurred based on reliance on prior city conduct

qualified as hardship); *Johnson v. Board of Adjustment*, 496 So. 2d 86, 89 (Ala. Civ. App. 1986) (reversing denial of variance for larger sign because financial losses incurred by relying on earlier representations by city qualified as hardship).

33.

James also provided proof that the City had told the ALDOT official that the location of the sign (which had been precisely pinpointed in the ALDOT application) was "NOT" within the City.   Further, James submitted simulated images of the proposed sign, which had been requested by a member of the ZBA at the June 15, 2023 hearing.

34.

In what can only be seen as an effort to confuse the ZBA and take the focus off of the indisputable extreme hardship suffered by James resulting from the City's mapping error, on July 13, 2023, the City began advancing new arguments to support its position that the variance should be denied.

35.

First, the City claimed that the James lease agreement with the owner of the property at 13512 Highway 43 North described the billboard as being located on the wrong parcel and that, therefore, James had provided the City and ALDOT with incorrect parcel information.

36.

Second, the City argued that James misrepresented to ALDOT which parcel the proposed sign would be located on by providing the incorrect parcel information to ALDOT.

37.

Finally, the City argued that James's variance request was governed by Section 1108.03 (not Section 808) of the Northport Zoning Regulations, which prohibits the granting of a variance that would establish a use that was otherwise prohibited.

38.

The City's first contention was provided to James via email by the Assistant City Attorney only seven days prior to the July 20, 2023 hearing.

39.

The other two new contentions were discovered by James when it found and reviewed the City's staff report to the ZBA after it was posted online on July 18, 2023. Even though James had made two formal requests for a copy of the staff report – on July 10 and 18 – the City failed to provide James with a copy.

40.

James dispositively refuted each of the City's new arguments with argument and evidence. At hearing on July 20, 2023, James offered a further unrebutted

showing that the "extreme hardship" standard had been satisfied.  The City's chicanery worked, however, and the ZBA voted to deny the variance request at the July 20, 2023 meeting.

41.

On August 3, 2023, James appealed the denial of its variance application to the Circuit Court of Tuscaloosa County pursuant to Alabama Code § 11-52-81.

42.

Because Alabama law makes it clear that James's appeal to Circuit Court is limited to a review of the issues heard by the ZBA, James's additional legal claims are being pursued here.  *E.g.*, *Maumenee v. Fairhope Bd. of Adjustment & Appeals*, 567 So. 2d 1351, 1352 (Ala. Civ. App. 1989) (appeal from a board of adjustment decision is to the circuit court for a trial *de novo* under § 11-52-81 and the scope of the inquiry must be the same as that before the board); *Ex Parte Averyt*, 487 So. 2d 912, 913 (Ala. 1986) ("We say this without any degree of equivocation because of the settled proposition that Averyt's collateral suit was not only proper, but it was the only avenue available for his presentation of the constitutional issues raised therein").  Thus, James is required to raise these claims – including all constitutional claims – outside of the action to appeal the variance denial.

**B.**    **James Has Been Dissuaded from Making Additional Applications.**

43.

James will be applying to the City of Northport for many new signs over the coming years and decades.  Audrey James grew up in Northport and has family in the area.  The Jameses are intent on raising their family in Northport.  Unfortunately, the City has adopted sign restrictions that are illegal and unconstitutional.  Thus, in addition to challenging the City's conduct to date, James has chosen to facially challenge the discretionary permitting process to which it is subject when applying to the City for permits before submitting additional applications.  *E.g.*, *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 755-56 (1988).

44.

James desires to post more signs in the City other than the one that it has already pursued.  Such signs would have a variety of shapes and sizes, each specifically tailored to the particular sign's location and intended audience.  James is a small independent sign company and is not tied to any sign format.  James looks forward to making these applications as the opportunities become available.  James is actively working on new sign locations in the City.  Therefore, it is essential that the City's rules and procedures for sign approvals be corrected as soon as possible.

45.

The City's current code and policies – including the discretionary Sign Regulations and the City's arbitrary enforcement thereof – mean that James's sign applications will be subject to patently unconstitutional provisions. Moreover, all businesses, organizations, and citizens in Northport, including the Jameses, are subject to improper limits on signs and improper procedures for the approval of signs.

46.

For instance, there is a total lack of time limits on the permitting process for signs in Northport. The City's sign permitting procedure requires those who want to communicate via a sign to submit an application before posting the sign but the City is never required to respond:

> **B. Procedure.** All sign permits shall be procured in accordance with the following procedure:
>
> 1. A written application shall be submitted to the Planning Department for review and processing. The Planning Department, only upon determination that all requisite documentation and fees accompany the application form, will accept the application. The application shall include supplementary information as may be specifically requested by the Planning Department to determine compliance with these regulations.
>
> 2. The Planning Department shall review the application, plans, and specifications to determine whether the proposed sign conforms to all applicable requirements of these regulations.
>
> 3. Following review and determination as to conformance with these regulations, the Planning Department shall either approve or deny the application for the sign permit. In case of denial, the

Planning Department shall specify the section or sections of these regulations with which the proposed sign is not in conformance.

4.    An application may be amended within thirty (30) days of the application date to include additional signs up to the allowable maximum.    Additional fees shall be charged if the additional signs exceed the size limitations for fee category.    After thirty (30) days, a new sign permit shall be required for any sign constructed and all fees shall be required.

Sign Regulations, § 806.01(B).

47.

Thus, City officials are allowed to issue a "pocket veto" to stop any application they do not favor.  This defect in the City's Sign Regulations has been widely known to be unconstitutional for decades, including numerous decisions from the Eleventh Circuit Court of Appeals.

48.

The City has also given City officials complete discretion over signs.  This discretion is unchecked by any objective criteria.  Examples of such discretion include, the City ban on any "sign that, in the opinion of the Planning Director, does or may constitute a safety hazard."  Sign Regulations, § 803(H).  The City also bans: "Any sign which simulates or imitates in size, color, lettering or design any traffic sign or signal, or which makes use of words, symbols or characters in such a manner to interfere with, mislead or confuse pedestrian or vehicular traffic." *Id.* at § 803(I).  City officials also have the discretion to deny or remove "[s]igns visible from a public right-of-way that use the word 'stop' or 'danger' or otherwise

16

present or imply the need or requirement of stopping, caution, the existence of danger, or which for any reason are likely to be confused with any sign displayed or authorized by a public authority." *Id.* at § 803(W). The City even bans the most fundamental signs of all: "Signs lettered in a crude or amateurish fashion." *Id.* at § 803(AA). These are but a few examples of the unbounded authority granted to City officials to restrict signs.

49.

In addition to its as-applied challenges, James facially challenges the discretionary permitting process to which it is subject. *City of Lakewood*, 486 U.S. at 755-56.

50.

The mere existence of these discretionary provisions has injured James and all other citizens and organizations in the City.

51.

The City's Sign Regulations also run afoul of other well-known constitutional norms. For example, the City has given itself absolute power to micromanage the content of all messages appearing on signs in the City. There can be no possible justification for such micromanaging of speech activity.

52.

For example, the City exempts from the rules several types of messages based on their content. Section 802 of the Sign Regulations exempts signs used for "special community events," "signs associated with school activities, school elections, celebrations or commemorations that have significance to the entire community," "[s]igns used to identify contractors, financial institutions or developers on a site under construction or undergoing modification," "[s]igns used at the entrance to subdivision, office park, or similar development that indicates lots for sale, the name of the developer, financial institution or other development parties," signs "depicting historic district events or activities and containing no commercial message," "holiday decorations used to celebrate a single holiday or season," "official signs," "official flags," "political" signs, and "real estate" signs. James does not qualify for any of these exemptions though its signs will have messages which are no more unattractive or harmful to the public than these exempt categories.

53.

Nearly every other allowance or restriction in the Sign Regulations is also based on the content of the message appearing on the proposed sign. Examples include: "General Business Signs," "Shopping Center Signs," "Menu Boards," "Subdivision Identification Markers," "Home Occupation Signs," and

"Commercial Banners."   *See* Sign Regulations, §§ 804.01-804.08.   In a perfect illustration of the City's confused understanding of its role in regulating speech, it provides that "[b]anners for special sales events, posted from Friday through Sunday, during University of Alabama home football game weekends shall be exempt."   Sign Regulations, § 804.08(E)(b).   The City has decided what content and speakers will be heard in Northport, the First Amendment be damned.

54.

Such control over speech by government officials could never be justified under any circumstances.

## FIRST CLAIM FOR RELIEF

## Violation of Free Speech Rights

55.

James incorporates herein by reference each of the allegations of paragraphs 1 through 54 as if they had been fully restated herein.

56.

Plaintiff's free speech rights, as guaranteed by the First Amendment to the U.S. Constitution and Article I, Section 4 of the Alabama Constitution, have been violated, both facially and as applied, in multiple respects:

**A.**   **The Sign Regulations Are Content-Based and Fail Strict Scrutiny.**

57.

In the decision of *Reed v. Town of Gilbert*, 576 U.S. 155 (2015)[1], the Supreme Court held that "[g]overnment regulation of speech is content-based if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Id.* at 163 (citations omitted). The Court deemed this rule to be "commonsense" and requires a reviewing court to determine whether a law "'on its face' draws distinctions based on the message a speaker conveys." *Id.*

58.

The Court reviewed the local sign law at issue and found that categories of signs such as "temporary directional signs," "political signs," and "ideological signs" were defined and regulated "entirely on the[ir] communicative content" and were thus content-based and subject to strict scrutiny. *Id.*

59.

The Court then devoted several pages of its opinion to rejecting the rationales of the lower courts for finding that the law was content-neutral. *Id.* at 163-71. For instance, the Court found that the government's motives in adopting the law are irrelevant if the law regulates based on content. *Id.* at 167 ("Innocent

---

[1] The Supreme Court recently confirmed that *Reed* is still the law of the land in *City of Austin v. Reagan Nat'l Advert. of Austin, LLC*, 142 S. Ct. 1464, 1471 (2022).

motives do not eliminate the danger of censorship presented by a facially content-based statute, as future government officials may one day wield such statutes to suppress disfavored speech").  The Court also noted that "a speech regulation targeted at specific subject matter is content-based even if it does not discriminate among viewpoints within that subject matter." *Id.* at 168-69.

60.

The Court then analyzed whether the content-based law could survive strict scrutiny, "which requires the Government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest." *Id.* at 171 (citations omitted).  The Court held that the law could not survive strict scrutiny because, even if the town's interests in traffic safety and aesthetics were considered compelling governmental interests, the code was "hopelessly underinclusive." *Id.* (noting that signs bearing certain messages were "no greater an eyesore" than other types of signs, as well as the lack of evidence that signs bearing some messages are more detrimental to traffic safety than signs conveying favored content).

61.

The City Sign Regulations and the invalid sign code at issue in *Reed* are materially indistinguishable.  The Sign Regulations repeatedly classify and regulate signs based on their content.

62.

First, the Sign Regulations define and categorize signs based on their content.  The Regulations then draw distinctions between signs bearing such content.  Clearly, in order to apply the Sign Regulations to a given sign application, the City must know the type of sign being proposed (and thus, the content of the sign's message).

63.

Although the recent *Reagan National Advertising* opinion lowered the standard to intermediate scrutiny for one aspect of the code (on-premise vs. off-premise distinctions), such a standard would never apply to other content-based favoritism shown in Northport, such as the preference for "Official Signs." Moreover, the City of Northport cannot meet intermediate scrutiny, and can offer no showing that such limits are needed in Northport.  *E.g.*, *Reed*, 135 S. Ct. at 2231 (finding "speaker-based" exemptions unconstitutional); *Solantic, LLC v. City of Neptune Beach*, 410 F.3d 1250, 1257-62 (11th Cir. 2005) (exemption from the substance of the zoning regulation for government signs created an impermissible content-based distinction).

64.

The City's many other content-based provisions, and allowances for signage by favored speakers concerning preferred subjects, are equally content-based and also cannot be justified. *Reed*, 135 S. Ct. at 2227.

65.

If James's proposed content had been favored by the City, his sign would be operating now. James was not fortunate enough to benefit from the City's exemptions and favored categories. The loss of James's right to post a sign and communicate with the public is directly attributable to the unconstitutional Sign Regulations.

**B.    The Sign Regulations Lack a Time Limit on Permitting.**

66.

The Sign Regulations' permitting requirement is a prior restraint on free speech that requires sign applicants to obtain prior approval from City officials before posting signs. *See Café Erotica of Fla., Inc. v. St. Johns County*, 360 F.3d 1274, 1282 (11th Cir. 2004) (holding that requiring a permit prior to erecting a billboard is "restraint on speech in advance of its occurrence"). The United States Supreme Court has affirmed that even content-neutral municipal zoning ordinances that condition the exercise of protected First Amendment activities on the approval of government officials must at least include specific time limits on the initial

decision-making process. *City of Littleton v. Z.J. Gifts D-4, LLC*, 541 U.S. 774, 776-80 (2004) (noting that undue delay results in the unconstitutional suppression of protected speech).

67.

Nevertheless, the Sign Regulations contain no time limit within which the City must respond to a sign application. This deficiency is fatal to the entire regulatory scheme. *E.g.*, *Solantic*, 410 F.3d at 1269 (Eleventh Circuit invalidating entire sign ordinance on the grounds that it did not contain time limits). This Court is not permitted to inject a time limit or other necessary safeguards into the City's code.

68.

The Sign Regulations are a wholly invalid prior restraint on speech activity. The loss of James's right to post a sign and communicate with the public is directly attributable to the unconstitutional Sign Regulations.

**C.    The Sign Regulations Convey Unfettered Discretion.**

69.

A prior restraint on speech, like the City's Sign Regulations, "may not delegate overly broad licensing discretion to a government official." *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 130 (1992). Moreover, a licensing scheme that "subjects the exercise of First Amendment freedoms to the prior

restraint of a license without narrow, objective, and definite standards to guide the licensing authority is unconstitutional." *Café Erotica*, 360 F.3d at 1284-85.

70.

As described above, the City's Sign Regulations lack precise and objective standards.  As experienced by James, City officials can even make up requirements on a whim.  *E.g.*, Sign Regulations § 806.01(B) (conveying discretion as to what is required when submitting a permit application).

71.

City officials also utilized their discretion to unilaterally refuse to allow James to seek an administrative appeal and a special exception despite James's explicit request for each.

72.

Government officials cannot be allowed to deny speech activity based on a whim. *E.g.*, *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 150-51 (1969); *Miami Herald Publ'g Co. v. City of Hallandale*, 734 F.2d 666, 669 (11th Cir. 1984); *The Lamar Co. v. City of Marietta*, 538 F. Supp. 2d 1366, 1372-73 (N.D. Ga. 2008).  The City's permitting discretion is unconstitutional.

73.

The City's variance process grants unlawful discretion to the ZBA.  Indeed, if an applicant satisfies the variance criteria – just as James did – but the ZBA does

not like the proposal, the Sign Regulations provide it with the authority to deny the variance.  Such discretion is clearly unlawful.  *E.g.*, *The Lamar Co. v. City of Marietta*, 538 F. Supp. 2d 1366, 1372 (N.D. Ga. 2008) (holding that ordinance which did not require permit to be issued if all applicable criteria were met afforded local officials total control over signs, such discretion created the potential for local officials to arbitrarily suppress undesirable speech, and that this single deficiency caused the entire code to be invalid).

74.

Moreover, the variance process authorizes the ZBA to approve or reject variances based on whether the applicant has shown "extreme hardship."  This is a wholly subjective determination that is in the eye of beholder.  While such criteria are permissible in the context of most development variances, they are not allowed when applied to signs.  *E.g.*, *Int'l Outdoor, Inc. v. City of Troy*, 974 F.3d 690, 698 (6th Cir. 2020) (finding extremely similar sign variance criteria to be subjective and unconstitutional); *Nittany Outdoor Adver., LLC v. College Township*, 22 F. Supp. 3d 392, 416 (M.D. Pa. 2014) (same).

75.

Based upon these and other bases, the City Sign Regulations are unconstitutional and the Court should declare them invalid in their entirety.  Because the Sign Regulations are constitutionally deficient, they are a nullity and

an invalid basis for the denial of James's proposed sign.  As a result, the City should be ordered to allow the requested sign to be posted.

**D.**     **The Sign Regulations Fail Intermediate Scrutiny.**

76.

Even if this Court were to find that portions of the City's Sign Regulations are not subject to strict scrutiny, they are subject to intermediate scrutiny.

77.

The City's Sign Regulations fail intermediate scrutiny because they are not narrowly tailored to serve a significant governmental interest. The *Reagan National Advertising* case shows the substantial evidentiary record that the City of Northport would need to introduce to show that its restrictions were justified. There is no possible justification for the City's micromanagement of all speech activity on signs.

78.

The Sign Regulations are unconstitutional and the Court should declare them invalid in their entirety. Because the Sign Regulations are constitutionally deficient, they were not a valid basis for the denial of James's proposed sign.  As a result, the City should allow the applied-for sign to be posted.

79.

Additionally, pursuant to 42 U.S.C. § 1983, James is entitled to compensation for the damages it has suffered as a result of the City's enforcement of the unconstitutional sign restrictions and, pursuant to 42 U.S.C. § 1988, reimbursement for all reasonable costs, including attorneys' fees, of bringing this lawsuit to assert its and others' constitutional rights.

## SECOND CLAIM FOR RELIEF

### Violation of Due Process

80.

James incorporates herein by reference each of the allegations of paragraphs 1 through 54 as if they had been fully restated herein.

81.

Under both federal and state law, the constitutionally-guaranteed right to due process of law includes the right to have notice and the opportunity to be heard. The City's own regulations establish that appeal applicants and special exception applicants shall have an opportunity to be heard.  A due process violation has occurred where there has been no opportunity to be heard.

82.

To afford James due process, the City was required to provide James notice of a hearing and an opportunity to be heard on the requests for an administrative appeal and a special exception.

83.

By refusing to schedule James's request for an appeal and separate request for a special exception, the City has refused to afford James an opportunity to be heard.

84.

Thus, Northport has violated James's Fourteenth Amendment right to due process and the equivalent provisions under the Alabama Constitution. This conduct violates both procedural and substantive due process protections.

85.

Pursuant to 42 U.S.C. § 1983, the City is liable to James for all damages arising from the denial of due process. Such damages have already been substantial. In addition, pursuant to 42 U.S.C. § 1988, James should be reimbursed for all of its attorneys' fees and costs for bringing this action.

## THIRD CLAIM FOR RELIEF

## Violation of Equal Protection Rights

86.

James incorporates herein by reference each of the allegations of paragraphs 1 through 54 as if they had been fully restated herein.

87.

The Sign Regulations favor the speech of governments and other favored speakers and organizations, while prohibiting speech by other entities that would be no more detrimental to any legitimate governmental interest.  Such favoritism has denied James and others equal protection under the law and thus violates the Fourteenth Amendment to the United States Constitution, both facially and as applied.  *E.g.*, *Rosenberger v. Rectors and Visitors of Univ. of Va.*, 515 U.S. 819, 828-29 (1995); *Advantage Media, LLC v. City of Hopkins*, 379 F. Supp. 2d 1030, 1046 (D. Minn. 2005).

88.

Based upon these and other bases, the City Sign Regulations are unconstitutional and the Court should declare them invalid in their entirety. Because the Sign Regulations are constitutionally deficient, they are a nullity and an invalid basis for the denial of James's proposed sign.  As a result, the City should allow the requested sign to be posted.

89.

Additionally, pursuant to 42 U.S.C. § 1983, James is entitled to compensation for the damages it has suffered as a result of the City's enforcement of the unconstitutional sign restrictions and, pursuant to 42 U.S.C. § 1988, reimbursement for all reasonable costs, including attorneys' fees, of bringing this lawsuit to assert its and others' constitutional rights.

## FOURTH CLAIM FOR RELIEF

### Violation of Alabama's Zoning Procedures Law

90.

James incorporates herein by reference each of the allegations of paragraphs 1 through 54 as if they had been fully restated herein.

91.

Alabama law provides that in order for an ordinance or zoning map to be valid, a municipal corporation must comply with the procedures set forth in Ala. Code § 11-52-77.

92.

When adopting the Sign Regulations and the disputed zoning map, the City failed to comply with these procedures.

93.

Therefore, under Alabama law, the Sign Regulations and zoning map are invalid and unenforceable.

94.

Because the Sign Regulations and zoning map are procedurally deficient, they are a nullity and an invalid basis for the denial of James's proposed sign.  As a result, the City should allow the requested sign to be posted.

## FIFTH CLAIM FOR RELIEF

### Injunction

95.

James incorporates herein by reference each of the allegations of paragraphs 1 through 54 as if they had been fully restated herein.

96.

The City's conduct is causing serious and irreparable harm to James and, unless enjoined, the conduct of the City will continue to injure James through the denial of its speech rights.  Others who would communicate on signs – or view signs in the City – are also being harmed.

97.

James has no adequate remedy at law to overcome the denial of its speech rights.

98.

James has been and will continue to suffer irreparable harm if the City is allowed to enforce the challenged regulations.

99.

James seeks temporary and permanent injunctive relief in order to prevent irreparable injury caused by the Sign Regulations, special exception procedures, and variance procedures.

WHEREFORE, Plaintiff James Outdoor, LLC demands judgment against Defendant City of Northport, Alabama, including the following:

(1)    an order preliminarily and permanently enjoining the City from enforcing the Sign Regulations and its procedures for appeals, variances, and special exceptions for sign applicants;

(2)    an order compelling Defendant to permit the requested sign;

(3)    an award pursuant to 42 U.S.C. § 1983 of such damages as are authorized by law including actual, consequential, general, and/or nominal damages resulting from the City's unconstitutional conduct;

(4)    an award pursuant to 42 U.S.C. § 1988 of legal fees and expenses;

(5)    a trial by jury on any issue that should not be resolved by the Court as a matter of law; and

(6)    such other and further relief as the Court may deem just and equitable.

DATED this 17th day of August, 2023.

Respectfully submitted,

BY:   /s/ E. Adam Webb
       E. Adam Webb* (Ga. Bar 743910)
       WEBB, KLASE & LEMOND, LLC
       1900 The Exchange, S.E.
       Suite 480
       Atlanta, Georgia 30339
       Adam@WebbLLC.com
       Telephone: (770) 444-0773
       Facsimile: (770) 217-9950

       /s/ Dustin W. Kennemer
       Dustin W. Kennemer (KEN052)
       MCMURTRIE KENNEMER, LLC
       200 Russell Street
       Huntsville, Alabama 35801
       tmcmurtrie@mcmurtrielaw.com
       dkennemer@mcmurtrielaw.com
       Telephone: (256) 534-1134
       Facsimile: (256) 534-1182

       *Attorneys for Plaintiff*
       *James Outdoor, LLC*

       **Pro Hac Vice* Application to be filed