FILED

2024 May-28  AM 11:25
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| **JAMES OUTDOOR, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 7:23-cv-1092-ACA** |
| | ) | |
| **CITY OF NORTHPORT,** | ) | |
| **ALABAMA,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiff James Outdoor, LLC operates a billboard advertising business. In 2021, James Outdoor invested a substantial amount of money and time to develop a billboard on property which it believed to be within Tuscaloosa County limits. James Outdoor later learned the property is within the limits of the Defendant City of Northport. The City notified James Outdoor that the proposed billboard was on property within the City limits, and James Outdoor: (1) sought to file an administrative appeal of that determination; (2) requested to apply for a special exemption; and (3) applied for a variance.

The City did not permit James Outdoor to pursue an administrative appeal or special exemption request, and after two hearings, the City's zoning board denied James Outdoor's variance application. James Outdoor then filed suit, alleging the

following claims [1] through 42 U.S.C. § 1983:

- Count One: The City's regulations for sign permit applications and variance procedures violate the First Amendment to the United States Constitution;

- Count Two: The City's refusal to give James Outdoor the opportunity to file an administrative appeal or seek a special exemption violated its right to due process as guaranteed by the Fourteenth Amendment to the United States Constitution; and

- Count Three: The City's regulations for sign permit applications violate equal protection under the law as guaranteed by the Fourteenth Amendment to the United States Constitution.

(Doc. 1 ¶¶ 26, 46, 48, 52–53, 61–89). In Count One and Count Three, James Outdoor challenges the regulations both facially and as applied. (*Id*. ¶¶ 56, 87).

After James Outdoor commenced this lawsuit, the City amended its sign permit regulations. (*See* doc. 7-1). The City now moves to dismiss the complaint, contending that: (1) it is a shotgun pleading; (2) revised regulations moot the facial challenges to the City's former regulations; (3) James Outdoor lacks standing for its as-applied challenges to the sign permit regulations; and (4) James Outdoor has not adequately alleged its claims. (*See* doc. 7). The court **WILL GRANT IN PART** and **WILL DENY IN PART** the City's motion.

---

[1] James Outdoor also asserts that the City's regulations for sign permit applications and variance procedures violate Article I, Section Four of the Alabama Constitution and that the City violated Alabama's zoning procedures law. (*See* doc. 1 ¶¶ 26, 46, 48, 52–53, 61–79, 90–94). Because the court will decline to exercise supplemental jurisdiction over the state law claims, *see infra* at 22–23, the court's discussion of James Outdoor's claims is limited to the federal claims.

Although James Outdoor could have alleged its claims with more precision, the court is unpersuaded that the complaint is so incomprehensible that dismissal on shotgun pleading grounds is appropriate. Accordingly, the court **WILL DENY** the City's motion on that ground.

Regarding the City's challenges to the court's jurisdiction, because the City's revised sign permit regulations resolve many of James Outdoor's constitutional critiques and the City's disavows any intent to return to the former sign permit regulations, the court **WILL FIND AS MOOT** all facial challenges in Count One and all but one facial challenge in Count Three. But because James Outdoor does not allege that it applied for a sign permit and does not allege that it intends to do so, James Outdoor lacks standing to pursue its as-applied challenge to the sign permit regulations in Count One and its facial and as-applied challenges to the sign permit regulations in Count Three. Accordingly, the court **WILL DISMISS WITHOUT PREJUDICE** all of Count Three and all but the part of Count One that challenges the variance procedures for lack of subject matter jurisdiction.

With this court's jurisdiction are James Outdoor's as-applied challenge to the variance procedures (Count One) and its due process claim (Count Two), but James Outdoor has not adequately alleged those claims. Accordingly, the court **WILL GRANT** the City's motion and **WILL DISMISS** James Outdoor's remaining federal law claims **WITH PREJUDICE**. Having resolved all claims arising under

federal law, the court **WILL DECLINE** to exercise supplemental jurisdiction over the state law claims and **WILL DISMISS** those claims **WITHOUT PREJUDICE**.

## I.    BACKGROUND

In deciding a motion to dismiss for failure to state a claim, the court must accept as true the factual allegations in the complaint and construe them in the light most favorable to the plaintiff. *Butler v. Sheriff of Palm Beach Cnty.*, 685 F.3d 1261, 1265 (11th Cir. 2012). Accordingly, these are the facts alleged by James Outdoor construed in the light most favorable to it:

James Outdoor "seeks to enter into the outdoor advertising business" by maintaining billboards for various commercial and noncommercial entities. (Doc. 1 ¶ 1). The City's code does not permit billboards like James Outdoor's within City limits. (*Id.* ¶ 5). But James Outdoor can put up signs outside the Tuscaloosa County's limits so long as James Outdoor complies with Tuscaloosa County's rules. (*See id.*).

James Outdoor found a property that, based on maps available to it, was not within the City's limits. (*Id.* ¶¶ 6–8). So James Outdoor began the process of obtaining lease agreements, funding, and applications with other government agencies to begin its billboard construction. (Doc. 1 ¶¶ 9–17). During this process, representatives with the City confirmed to the state transportation department that the intended billboard location was not in City limits. (*Id.* ¶¶ 12–13). But when James Outdoor applied for an electrical permit, the City refused that application,

contending that the property became part of the City's limits in 2015 and that the City had merely failed to update its maps. (*Id*. ¶¶ 19–21).

James Outdoor alleges that it sought three potential remedies for the City's change in position: (1) the ability to file an administrative appeal; (2) the opportunity to apply for a special exemption; and (3) applied for a variance with the City's zoning board. (*Id*. ¶ 22). The City did not permit James Outdoor to file an administrative appeal or request a special exemption, but the zoning board did consider James Outdoor's variance application. (*See* doc. 1 ¶ 23).

The City's zoning board held two hearings on James Outdoor's application at which James Outdoor presented evidence and testimony that the City's failure to update its maps "led to the expenditure of over $180,000 on the" billboard "and hundreds of hours of work." (*Id*. ¶¶ 27–28, 40; *see also id*. ¶¶ 31–33) (describing the supplemental information James Outdoor provided the City's zoning board). James Outdoor had to establish a "case of an extreme hardship" to obtain a variance. (*Id*. ¶ 26). Because neither "[a]cts of God" nor "economic conditions" qualify as extreme hardships (doc. 1 ¶ 26), the board ultimately "voted to deny the variance request" (*id*. ¶ 40). James Outdoor has appealed that decision. (*Id*. ¶ 41).

James Outdoor wants to post other signs in the City in the coming year and contends that "it is essential that the City's rules and procedures for sign approvals be corrected as soon as possible." (*Id*. ¶ 44). After James Outdoor filed its lawsuit,

the City "spent substantial money revising its regulations to ensure that they address[ed]" some of James Outdoor's concerns. (Doc. 7-1 at 6 ¶ 10). And the City has disavowed any intent to "revert[] to [the] former regulations." (*Id.*).

## II.   DISCUSSION

The City contends that dismissal is appropriate for three general reasons. First, the City contends that James Outdoor's complaint is an impermissible shotgun pleading. (Doc. 8 at 7–9). Second, the City contends that the court lacks jurisdiction over the claims in Count One and Count Three. (*Id.* at 9–23). Third, the City contends that James Outdoor has not adequately alleged its claims. (*Id.* at 23–36).

The court ordinarily considers challenges to the court's jurisdiction first. *See United States v. Meyer*, 50 F.4th 23, 31 (11th Cir. 2022) ("[A] federal court cannot address the merits of a dispute unless it satisfies itself that subject-matter jurisdiction exists."). But resolving the City's challenges to the court's jurisdiction requires the court to first discern what claims James Outdoor has alleged. (*See*, *e.g.*, doc. 8 at 10–16); *see also*, *e.g.*, *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 476–77 (1982) (explaining that certain jurisdictional challenges "must begin" with "[t]he injury alleged . . . in the[] . . . complaint").

So the court will first explain how the court construes James Outdoor's claims and then consider whether the court has jurisdiction over those claims. The court's analysis will then proceed to the merits of any claims properly before the court.

    1.   <u>The complaint is not a shotgun pleading.</u>

The City contends that James Outdoor's complaint is a shotgun pleading because (1) the complaint does not separate each cause of action into a different count and (2) the complaint is replete with conclusory and vague allegations. (Doc. 8 at 7–9). "A dismissal on shotgun pleading grounds is appropriate where it is *virtually impossible* to know which allegations of fact are intended to support which claim(s) for relief." *Turner v. Williams*, 65 F.4th 564, 576 n.11 (11th Cir. 2023) (quotation marks omitted; emphasis in original). Although the complaint is not a model of clarity, dismissal is inappropriate.

The court instead "strip[s] [the complaint] of [its conclusory statements of fact and legal conclusions] and focus[s] on the facts alleged and the legal theories they allegedly support." *Id*. at 577. In doing so, the court construes the complaint to allege the following federal law claims through 42 U.S.C. § 1983:

- <u>Count One</u>: The City's regulations for sign permit applications and variance procedures violate the First Amendment to the United States Constitution;

- <u>Count Two</u>: The City's refusal to give James Outdoor the opportunity to file an administrative appeal or seek a special exemption violated its right to due process as guaranteed by the Fourteenth Amendment to the United States Constitution; and

7

- Count Three: The City's regulations for sign permit applications violate equal protection under the law as guaranteed by the Fourteenth Amendment to the United States Constitution.

(Doc. 1 ¶¶ 26, 46, 48, 52–53, 61–89). In Count One and Count Three, James Outdoor challenges the regulations both facially and as applied. (*Id.* ¶¶ 56, 87).

### 2. The Court's Jurisdiction

The judicial power of the United States extends only to actual cases and controversies. *See* U.S. Const. art. III. "This case-and-controversy requirement demands [federal courts] can hear only justiciable matters . . ." *Baughcum v. Jackson*, 92 F.4th 1024, 1030 (11th Cir. 2024) (emphasis omitted). "Though there are many related doctrines, a justiciability inquiry is typically composed of three strands: standing, ripeness, and mootness." *Id.* (quotation marks omitted). And the failure of any strand divests the court of jurisdiction. *Id.*

In Count One and Count Three, James Outdoor challenges the City's sign regulations as constitutionally infirm both facially and as applied. (Doc. 1 ¶¶ 26, 46, 48, 52–53, 61–79; 86–89). The City challenges two aspects of justiciability for these claims: mootness and standing. (*See* doc. 8 at 9–23). The court "can address jurisdictional issues in any order [the court] choose[s]," *Acheson Hotels, LLC v. Laufer*, 601 U.S. 1, 4 (2023), so the court will begin with the City's mootness argument because the City presented that argument first, *see, e.g., Baughcum*, 92

F.4th at 1030 (considering jurisdictional challenges in the order the parties presented them).

### a. *Mootness*

After James Outdoor filed its complaint, the City "spent substantial money revising its regulations to ensure they address any concerns" that James Outdoor had raised. (Doc. 7-1 at 6 ¶ 10; *see also id*. at 4–5 ¶¶ 6–9). And "the City does not intend to . . . revert[] to [its] former regulations that have been challenged in this case." (*Id*. at 6 ¶ 10). The City asserts that because it has revised these regulations and does not intend to return to them, James Outdoor's facial challenges to the regulation in Count One and Count Three are moot. (Doc. 8 at 12; *see also* doc. 7-1 at 11–36). James Outdoor "concedes that its request for injunctive relief . . . is moot." (Doc. 12 at 12). Faced with this concession, the court **WILL GRANT** the City's motion as to James Outdoor's request for injunctive relief.

But James Outdoor contends that its claims are not completely moot because it requests monetary damages. (*See* doc. 12 at 12). On reply, the City clarifies that its mootness argument applies only to James Outdoor's facial challenge to the regulations and argues that James Outdoor's request for monetary damages is relevant only for its as-applied challenge to the regulations. (*See* doc. 15 at 4).

"[G]enerally, a challenge to the constitutionality of a statute is mooted by repeal of the statute." *Nat'l Advert. Co. v. City of Miami*, 402 F.3d 1329, 1332 (11th

Cir. 2005) (quotation marks omitted). But this general rule is subject to two limitations. *See*, *e.g.*, *id*. at 1333; *Del Castillo v. Sec'y, Fla. Dep't of Health*, 26 F.4th 1214, 1218 n.1 (11th Cir. 2022). First, "it must be absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Nat'l Advert. Co.*, 402 F.3d at 1333 (quotation marks omitted; alterations accepted). In this regard, "governmental entities and officials have been given considerably more leeway than private parties in the presumption that they are unlikely to resume illegal activities." *Coral Springs St. Sys., Inc. v. City of Sunrise*, 371 F.3d 1320, 1328–29 (11th Cir. 2004). And second, "when an ordinance is repealed by the enactment of a superseding statute, then the superseding statute or regulation moots a case only to the extent that it removes challenged features of the prior law." *Del Castillo*, 26 F.4th at 1218 n.1.

"Damage claims can save a § 1983 claim from mootness, but only where such claims allege compensatory damages or nominal damages for violations of procedural due process." *DA Mortg., Inc. v. City of Miami Beach*, 486 F.3d 1254, 1259 (11th Cir. 2007) (footnote omitted). James Outdoor does not claim either compensatory or monetary damages for violations of procedural due process in Count One or Count Three. (*See* doc. 1 ¶¶ 26, 46, 48, 52–53, 61–79; 86–89). So the court considers whether the City has established that it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur" and that the

revised regulations "remove[] [all] challenged features." *Nat'l Advert. Co.*, 402 F.3d at 1333 (quotation marks omitted; alterations accepted); *Del Castillo*, 26 F.4th at 1218 n.1.

In Count One, James Outdoor alleges the City's former sign permit regulations violate the First Amendment because the former regulations are content-based and provide decisionmakers with unfettered discretion. (Doc. 1 ¶¶ 55–79). And in Count Three, James Outdoor alleges that the City's former sign permit regulations violate the Equal Protection Clause because they "favor the speech of governments and other favored speakers and organizations" over other speakers. (*See*, *e.g.*, *id*. ¶ 87; *see also id*. ¶¶ 86–89). The City argues that it corrected this defect by "eliminat[ing] the challenged provisions at issue," except where "excluded [from regulation] by law, such as signs erected as a governmental function or public duty of a sovereign." (Doc. 8 at 13). And the City disavows any intent to return to the previous regulations. (Doc. 7-1 at 6 ¶ 10).

The court is persuaded that all facial challenges in Count One are moot because the City's new sign permit regulations "remove[] [the] challenged features of the prior" regulations and the City does not intend to revert to the previous sign permit regulations. *See Del Castillo*, 26 F.4th at 1218 n.1; *see also Butler v. Alabama Jud. Inquiry Comm'n*, 261 F.3d 1154, 1158 (11th Cir. 2001) (observing that subsequent repeal of the challenged action can moot a facial challenge to

government action on First Amendment grounds). Accordingly, the court **WILL GRANT** the City's motion and **WILL FIND AS MOOT** all facial challenges to the former regulations in Count One.

The court is not persuaded that the City's new sign permit regulations moot all of Count Three. Indeed, the City appears to concede that its new regulations maintain the favoritism between governmental and private speech that James Outdoor challenges. (*Compare* doc. 8 at 13, *with* doc. 1 ¶¶ 52, 65, 87). But the City contends—without dispute—that it has otherwise corrected the "constitutional critiques" James Outdoor alleges. (*See* doc. 8 at 13). So the court **WILL GRANT** the City's motion and **WILL FIND AS MOOT** all aspects of Count Three that facially challenge the sign permit regulations. The remainder of Count Three alleges that the City maintains constitutionally infirm distinctions between governmental and private speech. The court addresses this allegation, *infra* at 15–16.

### b. *Standing*

The City contends that James Outdoor lacks standing to pursue its challenges to the former sign permit regulations in Count One and Count Three because "James Outdoor does not allege it ever submitted any sign permit application to the City, and therefore it could not have been harmed by rules governing such permit applications." (Doc. 15 at 6) (emphasis omitted); (*see also* doc. 8 at 16–23). James Outdoor does not address this argument, focusing instead on its allegations that the

City rejected James Outdoor's *electrical* permit application and delegated substantial discretion to the zoning board. (*See* doc. 12 at 17; *see also* doc. 1 ¶¶ 19, 23, 71, 73–74).

Article III standing has three requirements: "(1) an injury in fact," *i.e.*, "an invasion of a legally protected interest"; (2) traceability, *i.e.*, "a causal connection between the plaintiff's injury and the challenged action of the defendant"; and (3) redressability, *i.e.*, "a likelihood, not merely speculation, that a favorable judgment will redress the injury." *Rojas v. City of Ocala*, 40 F.4th 1347, 1350 (11th Cir. 2022) (quotation marks omitted). The City focuses its arguments on the first and second standing requirements, contending that James Outdoor has not alleged that it suffered an injury in fact caused by the allegedly constitutionally infirm sign permit regulations because James Outdoor did not submit a sign permit application. (*See* doc. 8 at 18).

"[T]he injury in fact test requires more than an injury to a cognizable interest" but rather, "that the party seeking review be himself among the injured." *Koziara v. City of Casselberry*, 392 F.3d 1302, 1305 (11th Cir. 2004) (quotation marks omitted) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). Put differently, James Outdoor must establish its "concrete stake in this suit." *See Banks v. Sec'y, Dep't of Health & Hum. Servs.*, 38 F.4th 86, 93 (11th Cir. 2022) (quotation marks omitted). "Although standing in no way depends on the merits of the plaintiff's

contention that particular conduct is illegal, it often turns on the nature and source of the claim asserted." *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 976 (11th Cir. 2005) (quotation marks omitted). The analysis therefore "must begin" with "[t]he injury alleged . . . in the[] . . . complaint." *Valley Forge Christian Coll.*, 454 U.S. at 476–77 (1982); *see also*, *e.g.*, *Baughcum*, 92 F.4th at 1034 (starting with the plaintiff's "claimed injury"); *Bochese*, 405 F.3d at 977.

The traceability component of Article III standing considers whether the plaintiff's "injury fairly can be traced to the *challenged action*." *Valley Forge Christian Coll.*, 454 U.S. at 472 (quotation marks omitted; emphasis added). This analysis "is not an exacting standard" and "is less stringent than the tort-law concept of proximate cause." *Walters v. Fast AC, LLC*, 60 F.4th 642, 650 (11th Cir. 2023) (quotation marks omitted). But "traceability [is] lacking if the plaintiff would have been injured in precisely the same way without the defendant's alleged misconduct." *Id*. (quotation marks omitted) (collecting cases).

In Count One, James Outdoor alleges that the following former sign permit regulations violate the First Amendment to the United States Constitution as applied to James Outdoor: (1) Section 802 (the "Exempt Signs" provision); (2) Section 803 (the "Prohibited Signs" provision); (3) Sections 804.01 to 804.08 (the "Permitted Signs" provisions); (4) Section 806.01(B) (the "Procedure for Permanent Signs" provision); and (5) Section 808 (the "Variances and Waivers" provision). (Doc. 1

¶¶ 62, 67, 70; *see also id*. ¶¶ 26, 46, 52–53). In Count Three, James Outdoor challenges the former sign permit regulations facially and as-applied to the extent those regulations distinguish between governmental and private speech. (*Id*. ¶ 87); *see also supra* at 12. Because James Outdoor can maintain its facial challenges for only the regulations that affected its activities, *see CAMP Legal Def. Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1274 (11th Cir. 2006), the court discusses James Outdoor's challenges in Count Three together.

The problem, however, is that James Outdoor does not allege that it submitted a sign permit application. (*See* doc. 1 ¶¶ 5–21). Instead, James Outdoor submitted a *variance* application. (*Id*. ¶ 22). To have standing for its challenges to the City's former sign permit regulations, James Outdoor must establish that the allegedly constitutionally infirm regulations were applied to it. *See*, *e.g.*, *Granite State Outdoor Advert., Inc. v. City of Clearwater*, 351 F.3d 1112, 1117 (11th Cir. 2003) (observing that in an as-applied challenge, a plaintiff "has standing to challenge the constitutionality of *only*" the provisions of a municipal permit regulation that were applied to the plaintiff's application). But because James Outdoor does not allege that it submitted a sign permit application or that it intended to do so, James Outdoor lacks standing to make an as-applied challenge to the regulations that apply to sign permits in Count One, *i.e.*, the Exempt Signs provision, the Prohibited Signs

provision, the Permitted Signs provisions, or the Procedure for Permanent Signs provision, and the facial and as-applied challenges in Count Three.

The court acknowledges that *Granite State Outdoor Advertising, Inc.* was decided on a different procedural posture than this case, and James Outdoor emphasizes that it has not had the benefit of developing an evidentiary record. (*See* doc. 12 at 17–18). But irrespective of the procedural posture, to establish Article III standing for an as-applied challenge, James Outdoor must allege that the regulations were—or could reasonably be expected to be—"applied to it." *Club Madonna, Inc. v. City of Miami Beach*, 924 F.3d 1370, 1382–83 (11th Cir. 2019) (holding that a plaintiff lacked standing to bring a First Amendment as-applied challenge to various municipal ordinances). And James Outdoor has not carried that burden. Accordingly, the court **WILL GRANT** the City's motion as to those aspects of James Outdoor's claims and **WILL DISMISS** those claims **WITHOUT PREJUDICE** for lack of jurisdiction.

But James Outdoor does have standing as to one aspect of Count One, in which James Outdoor alleges that it (1) submitted a variance application and (2) the zoning board denied that application due to the allegedly unconstitutional scope of its discretion. (*See* doc. 1 ¶¶ 22, 40). Accordingly, the court's analysis will proceed to the extent that Count One asserts that the Variances and Waivers provision

violates the First Amendment as applied to James Outdoor's variance application
and the zoning board's discretion to deny that application.

### 3.  Whether James Outdoor has adequately alleged its claims

The City contends that James Outdoor has not adequately alleged its claims.
(*See* doc. 8 at 24–34). The court examines each claim in turn.

#### a.  Count One

In Count One, James Outdoor alleges that the Variances and Waivers
provision of the City's sign regulations created an unacceptable prior restraint on
speech by giving the zoning board too much discretion to conduct its "extreme
hardship" analysis. (*See* doc. 1 ¶¶ 27, 73); *see also supra* at 16. The City contends
that James Outdoor has not adequately alleged a claim for relief because "there are
clear and mandatory standards for granting or den[ying] . . . a variance." (Doc. 8 at
27). In response, James Outdoor contends that the criteria used for evaluating zoning
variances is "vague and undefined." (Doc. 12 at 27).

"A prior restraint on expression exists when the government can deny access
to a forum for expression before the expression occurs." *United States v. Frandsen*,
212 F.3d 1231, 1236–37 (11th Cir. 2000). Prior restraints generally occur in the
context of licensing or permitting schemes. *See Wright v. City of St. Petersburg*, 833
F.3d 1291, 1298 (11th Cir. 2016) (collecting cases). "To pass constitutional muster
a law subjecting the exercise of First Amendment freedoms to the prior restraint of

a [variance] must contain narrow, objective, and definite standards to guide the [issuing] authority." *Id*. at 1299 (quotation marks omitted); *see also, e.g., Barrett v. Walker Cnty. Sch. Dist.*, 872 F.3d 1209, 1220 (11th Cir. 2017) ("[T]he plainest example of an unconstitutional grant of unbridled discretion is a law that gives a government official power to grant permits but that provides no standards by which the official's decision must be guided.").

At the time of James Outdoor's variance application, the Variances and Waivers provision provided: "the [zoning board] shall only grant a variance in the case of an extreme hardship. Acts of God and economic conditions shall not be considered hardships for purposes of this section." (Doc. 1 ¶ 26).  So the provision directed the zoning board to deny variances unless the applicant could show an "extreme hardship" unrelated to acts of God or economic conditions. (*See id*.). And James Outdoor alleges that it adduced evidence and testimony that it had expended a substantial amount of money and "hundreds of hours of work" on the billboard project. (*Id*. ¶ 27). The court is not persuaded that this regulation reflects "an unconstitutional grant of unbridled discretion." *Barrett*, 872 F.3d at 1220.

Undeniably, the "extreme hardship" analysis appears less objective than other prior restraints that have been upheld by federal courts. *See*, *e.g.*, *Lady J. Lingerie, Inc. v. City of Jacksonville*, 176 F.3d 1358, 1362 (11th Cir. 1999) (discussing Supreme Court precedent that upheld "'a first-come, first-served' method of

allocating booths at the state fair"). But the "unbridled discretion" standard "implies that some measure of discretion is acceptable." *Id*. So the fact that the zoning board had *some* discretion does not mean that James Outdoor has alleged that the zoning board had constitutionally infirm discretion. *See id*. And perhaps most fatal for James Outdoor's First Amendment claim: "None of the grounds for denying a [variance] has anything to do with what a speaker might say." *Thomas v. Chicago Park Dist.*, 534 U.S. 316, 322 (2002); *but see*, *e.g.*, *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 150 (1969) (holding that a regulation violated the First Amendment where the regulation permitted decisionmakers to deny permit applications based on "only . . . their own ideas of 'public welfare, peace, safety, health, decency, good order, morals or convenience'").

Implicit in James Outdoor's allegations and arguments is not that the zoning board had constitutionally impermissible discretion, but rather, that the board's conclusion that James Outdoor had not established an "extreme hardship" was incorrect. (*See*, *e.g.*, doc. 1 ¶¶ 30–33). But "federal courts do not sit as zoning boards of review and should be most circumspect in determining that constitutional rights are violated in quarrels over zoning decisions." *Spence v. Zimmerman*, 873 F.2d 256, 262 (11th Cir. 1989) (collecting cases). Accordingly, the court concludes that James Outdoor has not adequately alleged a claim for relief in Count One and **WILL GRANT** the City's motion to dismiss.

### b. *Count Two*

In Count Two, James Outdoor contends that the City's refusal to give it an appeal of the City's determination that the property at issue was within City limits or process the separate request for a special exception has deprived James Outdoor of procedural due process. (Doc. 1 ¶¶ 80–85; *see also* doc. 8 at 28; doc. 12 at 28; doc. 15 at 12). To adequately allege a procedural due process claim through § 1983, James Outdoor must allege: "(1) a constitutionally protected interest in life, liberty or property; (2) governmental deprivation of that interest; and (3) the constitutional inadequacy of procedures accompanying the deprivation." *Bank of Jackson Cnty. v. Cherry*, 980 F.2d 1354, 1357 (11th Cir. 1992). The City contends that James Outdoor has not adequately alleged the third prong: the constitutional inadequacy of procedures accompanying the deprivation. (*See*, *e.g.*, doc. 8 at 29–30; doc. 15 at 13).

As an initial matter, City's brief exceeds the scope of what James Outdoor has alleged in Count Two. The court's analysis therefore begins with the allegations in the complaint. James Outdoor identifies the three separate forms of relief that he sought from the City: (1) the opportunity to file what James Outdoor calls an "administrative appeal" (*see* doc. 12 at 29); (2) the opportunity to apply for a "special exception" (doc. 1 ¶ 22); and (3) a variance (*id*.). But in Count Two, James Outdoor alleges that the City deprived it of due process "[b]y refusing to schedule [James Outdoor's] request for an [administrative] appeal and separate request for a special

exception." (*Id*. ¶ 83; *see also* doc. 1 ¶¶ 81–85). So the court disregards the City's arguments regarding the variance hearings because James Outdoor has not sought relief on that basis. (*See id*. ¶¶ 81–85).[2]

The City contends that it did not deny James Outdoor any process because James Outdoor "has an array of adequate state remedies at its disposal, including filing a writ of mandamus." or challenging the City's conduct through its appeal of the zoning board's decision. (*See* doc. 8 at 30; doc. 15 at 13). In response, James Outdoor argues that its appeal of the variance denial is an insufficient remedy "because Alabama law limits the scope of appeals . . . to a review of the issues heard by the" zoning board. (Doc. 12 at 28–29). James Outdoor does not address the availability of a mandamus petition. (*See id*.).

First, James Outdoor correctly describes Alabama law: on appeal, "[t]he scope of inquiry is the same as that before the" zoning board. *Bd. of Zoning Adjustment of Hueytown v. Warren*, 366 So. 2d 1125, 1128 (Ala. 1979). And because the zoning board did not decide the issues James Outdoor wanted to raise in its administrative appeal and request for special exemption, an appeal of the zoning board's decision is no remedy at all. *See id.*

---

[2] And James Outdoor clarifies in its briefing on the City's motion that its procedural due process claim is based only on "the City's refusal to allow James [Outdoor] to pursue an administrative appeal and a special exemption." (*See* doc. 12 at 28–29).

But the City has correctly identified the availability of other state remedies, including a mandamus petition. A mandamus petition is generally unavailable when a party can appeal a zoning board's decision. *See*, *e.g.*, *Bradley Outdoor, Inc. v. City of Florence*, 962 So. 2d 824, 834 (Ala. Civ. App. 2006). But when a plaintiff complains of matters outside the scope of what the zoning board can resolve a mandamus is available.  *E.g.*, *Beaird v. City of Hokes Bluff*, 595 So. 2d 903, 905 (Ala. Civ. App. 1992) ("The board of zoning adjustment has no power to consider the issues raised in [the plaintiff's] complaint, since an administrative body has no power to declare an ordinance unconstitutional."). Accordingly, there are adequate remedies available to James Outdoor under Alabama law and **WILL GRANT** the City's motion as to Count Two and **WILL DISMISS** Count Two **WITH PREJUDICE**.

4.  Supplemental Jurisdiction

Because the court will dismiss all claims arising under federal law, only the claims arising under Alabama law remain. A "district court[] may decline to exercise supplemental jurisdiction" where, as here, it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The Eleventh Circuit encourages district courts to do so if all federal claims are dismissed before trial. *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004); *accord Silas v. Sheriff of Broward Cnty.*, 55 F.4th 863, 866 (11th Cir. 2022) ("A district court . . . will rarely

err by declining supplemental jurisdiction after the federal claims that supported its jurisdiction are dismissed."). The court therefore **WILL DECLINE** to exercise jurisdiction over the remaining claims and **WILL DISMISS** those claims **WITHOUT PREJUDICE**.

### III.   CONCLUSION

The court **WILL GRANT IN PART** and **DENY IN PART** the City's motion to dismiss. (Doc. 7). The court will enter a separate final order of dismissal consistent with this memorandum opinion.

**DONE** and **ORDERED** this May 28, 2024.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE